MAURICE CAMPBELL et al., d/b/a CAMPBELL GRAIN & SEED COMPANY, Plaintiffs-Appellants, v. FRANK YOKEL et al., Defendants-Appellees.

(No. 73-415;

Fifth District—June 28, 1974.

Philip C. Quindry, of Albion, for appellants.

Joseph T. Scott, of Grayville, for appellees.

Mr. JUSTICE CREBS delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Edwards County granting defendants' motion for a summary judgment and dismissing plaintiffs' complaint.

Plaintiffs, owners and operators of the Campbell Grain and Seed Company, alleged in the complaint that they had reached an oral agreement on February 7, 1973, with the defendant farmers. It was alleged that the defendants agreed to sell and the plaintiffs agreed to purchase 6,800 to 7,200 bushels of yellow soybeans at a price of $5.30 per bushel. Defendants admit that such an agreement was reached but maintain that the agreement was tentative and was not intended to be binding unless a written contract was signed. After the conversation between plaintiffs and defendants on February 7, 1973, the plaintiffs signed and mailed to the defendants a written confirmation of the oral agreement. Defendants received the written confirmation but did not sign it or give any notice of objection to its contents to the plaintiffs.

On March 9, 1973, the defendants signed a written request with the Agricultural Stabilization and Conservation Service seeking permission to sell 6,900 bushels of soybeans. The Agricultural Stabilization and Conservation Service possessed a lien on the soybeans, and its permission was needed before the defendants could sell. The request form signed by the defendants did not mention the plaintiffs, but, for an unknown reason, the Agricultural Stabilization and Conservation Service mailed a copy of the form to the plaintiffs.

Defendants refused to deliver any soybeans to the plaintiffs and on April 30, 1973, informed the plaintiffs that, since the defendants did not sign the written confirmation, they did not feel bound by any agreement.

Plaintiffs' complaint requested damages or, in the alternative, specific performance of the alleged contract. Defendants' motion for summary judgment was based upon the pleadings and asserted the statute of frauds as a defense. The circuit court granted the summary judgment motion holding that, because the statute of frauds was a defense to

the complaint, there was no genuine issue as to any material fact and that the defendants were not "merchants" within the meaning of section 2—201(2) the Uniform Commercial Code (Ill. Rev. Stat. ch. 26, sec. 2—201(2)).

Section 2—201 of the Code (Ill. Rev. Stat. ch. 26, sec. 2—201) provides:

> "(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
>
> (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received."

Plaintiffs contend that the court erred in finding that the defendant farmers were not "merchants" and that section 2—201(2) was not applicable. We agree.

Very few reviewing courts have attempted to resolve the question of whether a farmer is a "merchant" within the meaning of the various provisions of the Uniform Commercial Code. In *Cook Grains, Inc. v. Fallis*, 239 Ark. 962, 395 S.W.2d 555, a case factually similar to the instant case, the Arkansas Supreme Court held that a farmer is not a "merchant" when he is acting in the capacity of a farmer and that he is acting in such a capacity when he is attempting to sell the commodities that he has raised. In *Oloffson v. Coomer*, 11 Ill.App.3d 918, 296 N.E.2d 871, the appellate court stated, by dictum, that a farmer in the business of growing grain is not a "merchant" with respect to the merchandising of that grain.

We disagree with the decisions in *Cook Grains* and *Oloffson* and feel that the reviewing courts in those cases failed to properly interpret the Uniform Commercial Code definition of "merchant." Section 2—104(1) of the Code (Ill. Rev. Stat. ch. 26, sec. 2—104(1)) states:

> "(1) 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the

transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

Growing crops are "goods" within the meaning of article 2 of the Commercial Code (Ill. Rev. Stat., ch. 26, sec. 2—105(1)). The above definition of "merchant" leads us to the conclusion that a farmer may be considered a merchant in some instances and that one of those instances exists when the farmer is a person "who deals in goods of the kind * * * involved in the transaction."

The defendants in the instant case have admitted in discovery depositions that they have grown and sold soybeans and other grains for several years. They have sold to the plaintiffs and to other grain companies in the past. We believe that a farmer who regularly sells his crops is a person "who deals in goods of that kind."

■■ The authors of the comments to the Uniform Commercial Code state that the term "merchant" applies to a "professional in business" rather than to a "casual or inexperienced seller or buyer." (S.H.A., ch. 26, sec. 2—104, Uniform Commercial Code, Comments 1 and 2.) The defendants admittedly were not "casual or inexperienced" sellers. We believe that farmers who regularly market their crops are "professionals" in that business and are "merchants" when they are selling those crops.

Our decision does not place a great burden on farmers. As the comments to section 2—104 point out, the provisions in article 2 of the Commercial Code dealing with "merchants" involve "normal business practices which are or ought to be typical of and familiar to any person in business." The practices involved are "non-specialized business practices such as answering mail." (S.H.A., ch. 26, sec. 2—104, Uniform Commercial Code, Comment 2.) Placing this small burden upon farmers in certain instances lessens the possibility that the statute of frauds would be used as an instrument of fraud. For example, assuming that an oral agreement had been reached in the instant case, that the farmers had received the written confirmation signed by the plaintiffs and that the farmers were not "merchants," the farmers would be in a position to speculate on a contract to which the grain company was bound. If the market price fell after the agreement had been reached, the farmers could produc the written confirmation and enforce the contract. If the market price rose, the farmers could claim the protection of the statute of frauds and sell his crop on the open market. Our holding reduces the possibility of this type of practice in cases in which the farmer is a person who regularly sells crops of the kind involved in the transaction at hand.

In *Ohio Grain Co. v. Swisshelm*, (Ohio App.2d) (N.E.2d) (Court of Appeals of Greene County, rendered Dec. 5, 1973), the court held that a farmer was a "merchant" when he sold his soybean crop to a grain company.

In *Fear Ranches, Inc. v. Berry*, 470 F.2d 905 (10th Cir. 1972), the plaintiff, purchased cattle from defendant Perschbacker who had purchased the cattle from defendant Berry. When the plaintiff discovered that the cattle were diseased, he brought suit against the defendants alleging a breach of an implied warranty of fitness. One of the issues raised was whether the defendants were merchants under the Uniform Commercial Code. Perschbacker was active as a buyer and seller of cattle and was found to be a merchant. Berry was a rancher who had been in the business of selling his cattle to meat packers. His sale to Perschbacker was his first sale to a non-packer. The Court of Appeals found that Berry was not a merchant with respect to his sale to Perschbacker because the sale of cattle for resale was the sale of a different type of goods and was a different type of business than was the sale of beef for slaughter. The court's opinion suggests, although it does not specifically state, that Berry would have been a merchant with respect to the sale to Perschbacker if he had been in the business of raising cattle and selling them for resale. The analogy to the instant case is obvious. The defendants were in the business of growing soybeans and other grains and selling their crops to grain companies. They should be considered merchants, therefore, with respect to such sales.

■■■ For the foregoing reasons, we hold that the court erred when it determined that the defendants were not merchants. Our decision is not tantamount to a finding that a contract did exist between the plaintiffs and defendants. We hold merely that, since the defendants were merchants, section 2—201(2) operates to bar the defendants from asserting the defense of the statutes of frauds. The burden of pursuading the trier of fact that an oral contract was in fact made prior to the written confirmation is unaffected. (See S.H.A. ch. 26, sec. 2—201, Uniform Commercial, Code, Comment 3; Illinois Code Comment, subsection 2.) The cause, therefore, is remanded with directions that the Circuit Court of Edwards County proceed in accordance with the views herein expressed.

Reversed and remanded with directions.

G. MORAN, P. J., and CARTER, J., concur.