**RUSH JOHNSON FARMS, INC., a corporation, Plaintiff-Appellant,**

v.

**MISSOURI FARMERS ASSOCIATION, INC., a Missouri Corporation, Defendant-Respondent.**

No. KCD 28343.

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

Harry L. Porter, Marceline, for plaintiff-appellant.

Jack Lukehart, Brunswick, for defendant-respondent.

Before SOMERVILLE, P. J., and WASSERSTROM and TURNAGE, JJ.

TURNAGE, Judge.

This case presents for the first time in Missouri the question of whether or not a farmer may be considered a "merchant" under the Uniform Commercial Code, § 400.2–201, RSMo 1969.

Rush Johnson Farms, Inc., brought suit against Missouri Farmers Association, Inc., (MFA) for $4,094.60 which Johnson claimed to be the balance due for soybeans sold to MFA. MFA defended on the ground Johnson had entered into a contract for the delivery of 6,000 bushels of beans and had failed to deliver the entire amount and the sum withheld represented damages to MFA for the shortage. Johnson contended the contract was not for a definite quantity of beans. Further, Johnson argued the contract was oral and under § 400.2–201 could not be proven because it involved more than $500 and was not in writing signed by him. MFA countered by stating Johnson was a "merchant" within the code definition and under subsection 2 of § 400.2–201 the oral contract was admissible.

By the court's instructions the jury was authorized to find an indebtedness from MFA to Johnson if there were not a contract for the sale of 6,000 bushels of beans and if MFA had not paid for all of the beans delivered. The jury returned a verdict in favor of MFA.

On this appeal the only question preserved for review by Johnson is whether or not Johnson can be held to be a merchant

under sub-section 2 of § 400.2–201 so as to invoke the exception therein contained for the proof of an oral contract. Affirmed.

Johnson's petition was brought in the name of a corporation, however, the proof at trial did not indicate any transaction in the name of the corporation. No point is made on this appeal concerning whether or not the transaction was a personal or a corporate one. For purposes of this opinion, the corporate status of Johnson will be disregarded.

Johnson testified he owned farms in two Missouri counties. In addition, the proof showed he owned a farm in partnership with Andrew Baer who apparently carried out the actual farming operation on both the partnership land and that belonging to Johnson. Johnson testified he had sold soybeans to elevators for many, many years, although this was the first time he had sold his beans to the MFA elevator in Salisbury.

When Johnson was getting ready to sell his '72 crop in 1973, he stated he had checked with a number of elevators to determine the market price of soybeans. He called the MFA elevator at Salisbury and requested he be notified when beans reached $4.00 a bushel. On January 2, 1973, the secretary at such elevator called Johnson and told him beans had reached $4.02 per bushel. He stated he agreed to sell his crop at the $4.02 figure and estimated he would have from 5,000 to 6,000 bushels. The elevator secretary testified the agreement was to sell the definite quantity of 6,000 bushels and the jury found this to be the fact.

Within a few days after January 2, the secretary mailed Johnson a written contract calling for the sale of 6,000 bushels of soybeans at $4.02 per bushel. Johnson stated he received this and was excited, but he did not contact the elevator. Instead he threw the contract away.

The court, at least by implication, found Johnson came within the meaning of the word "merchant" when it submitted this case to the jury.

Section 400.2–105 defines the word "goods" as used in § 400.2–201 to include "the unborn young of animals and growing crops." Section 400.2–104 defines "merchant" as:

. . . a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

The UCC comment following § 400.2–104 states:

The term "merchant" as defined here roots in the "law merchant" concept of a professional in business. The professional status under the definition may be based upon specialized knowledge as to the goods, specialized knowledge as to business practices, or specialized knowledge as to both and which kind of specialized knowledge may be sufficient to establish the merchant status is indicated by the nature of the provisions.

The special provisions as to merchants appear only in this Article and they are of three kinds. Sections 2—201(2), 2—205, 2—207 and 2—209 dealing with the statute of frauds, firm offers, confirmatory memoranda and modification rest on normal business practices which are or ought to be typical of and familiar to any person in business. For purposes of these sections almost every person in business would, therefore, be deemed to be a "merchant" under the language "who . . . by his occupation holds himself out as having knowledge or skill peculiar to the practices . . . involved in the transaction . . ." since the practices involved in the transaction are non-specialized business practices such as answering mail. In this type of provision, banks, or even universities, for example, well may be "merchants." But even these sections only apply to a merchant in his mercantile capacity; a lawyer or bank president buying fishing tackle for his own use is not a merchant.

The question of whether or not a farmer can be considered a merchant under the

provisions of the UCC here considered has been the subject of a number of decisions. Johnson relies primarily upon *Cook Grains, Inc. v. Fallis*, 239 Ark. 962, 395 S.W.2d 555 (1965) and *Loeb and Company, Inc. v. Schreiner*, 294 Ala. 722, 321 So.2d 199 (1975) and two Illinois Court of Appeals cases. Johnson concedes with reference to the Illinois Court of Appeals cases that the Supreme Court of Illinois in *Sierens v. Clausen*, 60 Ill.2d 585, 328 N.E.2d 559 (1975) has held a farmer may be a merchant and in effect has overruled the Court of Appeals cases.

A number of states have held a farmer may qualify as a merchant under these sections of the UCC. The case which this court finds to be the better reasoned of all of the cases which has considered the question is *Nelson v. Union Equity Co-op. Exchange*, 548 S.W.2d 352 (Texas 1977). In *Nelson* the Supreme Court of Texas thoroughly considered the section involved and cited most of the cases which have dealt with this question. The Texas court reached the conclusion that the farmer involved in that case fell within the definition of merchant as contained in the UCC. The court pointed out the distinction between the definition of the term merchant as used in the UCC and the dictionary definition which has been relied upon by some courts in deciding this question. In *Nelson* the court held the definition to be applied is that contained in the UCC.

In *Nelson* the court stated: "Under that definition, a person is a 'merchant' if he (1) deals in goods of a kind . . .." The court held Nelson satisfied that requirement because he dealt in wheat. The court pointed out the UCC does not define the word "deal" but quoted from Ballentine's Law Dictionary the definition "to buy or to sell." The court held Nelson qualified under that definition because he raised his own wheat and annually sold that crop himself.

Under the circumstances of this case, Johnson would qualify as a merchant since he is shown to be one who deals in beans because for many, many years he has sold his bean crop. He admitted he was familiar with the operation of elevators and how they conducted business and further showed himself capable of ascertaining the market price of beans. In *Nelson* the court also observed that under the definition of merchant in the UCC it is not necessary that a person actually hold himself out as having some particular knowledge or skill to qualify as a merchant, but rather a person by his occupation holds himself out as having knowledge or skill peculiar to the goods involved in the transaction.

It is probably on this point that the sharpest division occurs between the cases holding a farmer can qualify as a merchant and those which hold to the contrary. In *Nelson* the court held that an experienced farmer does by his occupation hold himself out as having knowledge or skill of the goods which he is selling. The court further held that a reasonable person could expect an experienced farmer to thoroughly know the crop he had raised and held for sale.

This court adopts the reasoning in *Nelson*. This court does not believe that anyone in this day and age looks upon any person or corporation who conducts a farming operation as a simple tiller of the soil. It is well known that the marketing of a crop is certainly as important as the raising of it. Johnson fully revealed in this case his knowledge of the market and his thorough familiarity with marketing practices and procedures in trying to obtain the best price possible for his product. Under the definition of merchant, as contained in the UCC, Johnson fully qualified as such so that the oral contract in this case was not barred under the statute of frauds as contained in § 400.2–201.

To hold Johnson meets the definition of merchant does not impose any burden on him or any farmer with similar qualifications. The only requirement the UCC imposed upon Johnson was to notify MFA in writing of his objection to the contract which specified 6,000 bushels. For a person entering into a transaction involving almost $25,000, this does not appear to be unreasonable.

This court further finds the definition of goods, quoted above, which includes grow-

ing crops as well as the unborn young of animals, to clearly indicate the framers of the UCC contemplated that farmers could be included within the transaction covered by § 400.2–201. This, coupled with the comment on § 400.2–201, quoted above, that "almost every person in business would, therefore, be deemed to be a 'merchant' . . . since the practices involved in the transaction are non-specialized business practices such as answering mail" would indicate a clear intent to give a broad meaning to the term "merchant" which can include farmers.

■ It should be made clear a farmer is not per se included in the definition of "merchant." Whether or not a particular farmer qualifies as a merchant under the sections discussed would depend on the individual experience and activities of the person involved. This court holds Johnson in this case fully came within the definition of "merchant."

The courts in *Loeb, supra,* and *Decatur Cooperative Association v. Urban,* 219 Kan. 171, 547 P.2d 323 (1976) considered that part of the UCC comment pertaining to a "professional in business" to show a farmer is not intended to come within the definition of "merchant." However, the court in *Nelson* held the farmer there was a professional and not a casual or inexperienced seller. The court held he was a professional in the business of growing and selling the crops he raised. Under either the *Nelson* approach, or the specific comment on § 400.-2–201 that the only practice involved is the answering of mail, the result of the same.

The opposite approach taken by the courts in *Loeb; Cook Grains;* and *Decatur Cooperative* cases, seems to treat any farmer as a simple tiller of the soil and strictly non-professional in the marketing of his crops. These arguments are well answered in *Ohio Grain Co. v. Swisshelm,* 40 Ohio App.2d 203, 318 N.E.2d 428 (1973) when the court stated at 318 N.E.2d 430[2]:

> He would represent defendant as a simple tiller of the soil, unaccustomed to the affairs of business and the marketplace. Farming is no longer confined to simple labor. Only an agribusinessman may

hope to survive. This defendant was clearly familiar with farm markets and their operation and followed them with some care.

Johnson was an experienced farmer who was well conversant with the marketing of his bean crop. He received the written confirmation of his agreement to sell. The only obligation the UCC placed upon him was to write a note to MFA stating he had not agreed to sell 6,000 bushels, if that were the fact. This is not a great burden to place upon anyone who is capable of owning and operating a large farming operation and who knows the marketing procedures for his produce. To hold Johnson did not meet the simple requirement of a "merchant" under the UCC would be an affront to his proven experience and capability. This court is not willing to take a head in the sand approach and close its eyes to the plain facts existent in the farming industry.

For the reasons stated, this court holds Johnson came within the definition of "merchant." The judgment is affirmed.

All concur.